UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION


UNITED STATES OF AMERICA,                                                          Plaintiff,

v.                                                      Criminal Action No. 3:19-cr-79-DJH

ANTONIO CORTEZ PAGE,                                                        Defendant.

* * * * *

**<u>MEMORANDUM OPINION AND ORDER</u>**

Defendant Antonio Cortez Page moves to suppress evidence seized by police during a search of his residence, asserting several defects in the warrant authorizing the search. (Docket No. 22) The United States maintains that the warrant was valid and that the good-faith exception would apply in any event.[1] The Court agrees with the government and will therefore deny Page's motion to suppress.

**I.**

The facts underlying the motion are largely uncontested. Louisville Metro Police detectives investigating a homicide at 3302 Renwood Boulevard in Louisville, Kentucky, found a set of keys near the victim's body. By testing the keys in the locks of nearby apartments, the detectives concluded that the keys matched the door to Apartment 103, Page's residence. Detective Tim O'Daniel applied for a warrant to search Apartment 103 for evidence

> [i]ncluding but not limited to: blood, saliva, physiological fluids and secretions, hair, fibers, fingerprints, palm prints, footprints, shoeprints, relevant clothing, weapons and firearms, knives or other cutting instruments, blunt force instruments, projectiles, ammunition, bullet casings and fragments; dirt, dust, and soil, paint samples, glass and plastic or fragments, tools or marks thereof used to gain access to locked premises or containers and items containing traces of any of the above mentioned articles. Cell phones, or any other device that may contain

---

[1] By agreement of the parties, the Court will not address the *Miranda* portion of Page's motion at this time. (*See* D.N. 39)

electronic data, . . . or any written material that may contain information about a/the crime and any other item(s) that may be relevant.  As well as any and all items pertaining to K[entucky] R[evised] S[tatutes §] 218A.

(D.N. 22-3, PageID # 52)  O'Daniel set out the following facts in his affidavit:

- "detectives located a bag full of an undetermined amount of currency next to the victim's body";
- "the victim had in his possession a key ring with his car key as well as the apartment keys that went to . . . Apartment #103";
- "[u]pon locating this apartment, detectives could strongly smell marijuana emanating from the residence"; and
- "[d]etectives know through their knowledge and experience that the sale of narcotics [is] conducive with large amounts of currency."

(*Id.*, PageID # 53)  O'Daniel further stated his belief that "the victim was intending to drop off and/or pick something up from [Apartment 103] that has a direct correlation with the modus operandi behind the shooting."  (*Id.*)

The search warrant was issued and executed on March 10, 2018.  (D.N. 25-1, PageID # 78)  Inside Apartment 103, detectives found personal items belonging to Page, as well as "numerous items indicative of drug trafficking," including a handgun; 18.2 pounds of marijuana; 2.46 pounds of cocaine; 23 grams of methamphetamine; "several digital scales; baggies; a vacuum sealer; and [P]yrex measuring cups."  (D.N. 25, PageID # 61)  Page seeks suppression of all evidence seized during the search.  (D.N. 22, PageID # 43)

## II.

Pursuant to the Fourth Amendment, a warrant may issue only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  The issuing judge, "[i]n reviewing a search warrant application, . . . considers whether the information adds up to 'a fair probability' that the police will find evidence of crime at the location."  *United States v. Ardd*, 911 F.3d 348, 351 (6th Cir. 2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)).

Page asserts that the necessary "nexus" was lacking here.  *See id.*  He also contends that the warrant affidavit was misleading and relied on evidence obtained through an unconstitutional search.  He fails to demonstrate that suppression is appropriate on any of these grounds, however.

## A.    Keys

Page first argues that the police conducted an unlawful search when they tested the keys in the lock of Apartment 103 and that the warrant thus was issued in part on the basis of a fact obtained in violation of the Fourth Amendment.  (D.N. 22, PageID # 43-46)  Although he acknowledges the Sixth Circuit's holding that "the mere insertion of a key into a lock . . . to determine whether the key operates the lock[] is not a search," *United States v. Salgado*, 250 F.3d 438, 456 (6th Cir. 2001), Page maintains that this rule is no longer valid in light of *Florida v. Jardines*, 569 U.S. 1 (2013), where the Supreme Court held that "[t]he government's use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment," *id.* at 11-12, because officers lacked "an implied license to enter the porch . . . to conduct a search."  *Id.* at 10.  Following *Jardines*, Page points out, the First Circuit has held that testing a key in a lock amounts to an unconstitutional search.  (D.N. 22, PageID # 44 (citing *United States v. Bain*, 874 F.3d 1 (1st Cir. 2017)))  Indeed, the First Circuit observed in *Bain* that "*Jardines* eliminated th[e] basis for *Salgado*'s holding."  874 F.3d at 16.

The Court need not decide whether *Salgado* was abrogated by *Jardines*, though, because even if insertion of the key constituted an unlawful search, the warrant is saved by the good-faith exception.  Under that exception, "the exclusionary rule does not bar from admission 'evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be

defective.'" *United States v. Christian*, 925 F.3d 305, 312 (6th Cir. 2019) (quoting *United States v. Leon*, 468 U.S. 897, 905 (1984)). *Leon* set out four examples of situations in which the exception would not apply: (1) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) where the issuing magistrate wholly abandoned his judicial role"; (3) where the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." 468 U.S. at 923 (internal quotation marks and citations omitted).

Here, as in *Bain*, the facts present "a circumstance not expressly addressed in *Leon*: the warrant affidavit forthrightly discloses facts that establish probable cause, but one of the facts essential to establishing probable cause (the result of the key turn) was obtained as a result of an [arguably] unconstitutional search." 874 F.3d at 21. The Sixth Circuit, like the First Circuit, permits application of the good-faith exception in such circumstances so long as "the officers who sought and executed the search warrants acted with good faith" and "the facts surrounding the initial warrantless search were close enough to the line of validity to make the executing officers' belief in the validity of the search warrants objectively reasonable." *United States v. McClain*, 444 F.3d 556, 566 (6th Cir. 2006); *see United States v. Tucker*, 742 F. App'x 994, 1003 (6th Cir. 2018) (discussing *McClain* exception); *Bain*, 874 F.3d at 21-23 (applying similar test). There is no evidence of bad faith here, nor does Page contest the government's argument that the good-faith exception applies. (*See* D.N. 27) Moreover, in light of the unequivocal Sixth Circuit precedent allowing insertion of a key without a warrant, *see Salgado*, 250 F.3d at 456,

and in the absence of any decision expressly overruling or abrogating that precedent, "the facts surrounding [insertion of the key] were close enough to the line of validity to make the executing officers' belief in the validity of the search warrant[] objectively reasonable." *McClain*, 444 F.3d at 566; *see Bain*, 874 F.3d at 22-23 (reaching same conclusion). Finally, as explained below, there was a sufficient nexus between Apartment 103 and the suspected crime. The good-faith exception therefore applies. *See Bain*, 874 F.3d at 23.

**B.     Nexus**

Page next contends that "there was no adequate nexus between the homicide and Apartment #103." (D.N. 22, PageID # 46) "To meet the nexus requirement of probable cause, 'the circumstances must indicate why evidence of illegal activity will be found in a particular place.'" *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc)). Page argues that there was "no reason to suspect" that "evidence of the murder such as 'blood, saliva, hair, fiber, bullet casings and fragments, etc.' . . . would be found in the apartment" given that the suspects had been witnessed fleeing the scene. (*Id.* (quoting affidavit)) While this may be true, the affidavit also sought "any and all items pertaining to KRS 218A"—the Kentucky Controlled Substances Act—and provided facts indicating that the victim was involved in drug trafficking; that he had access to Apartment 103; and that there was marijuana inside Apartment 103.[2] (D.N. 22-3, PageID # 53) With these facts, the affidavit demonstrated a sufficient link between Apartment 103 and drug trafficking—a point Page does not dispute. *See Carpenter*, 360 F.3d at 594; *see also United States v. Church*, 823 F.3d 351, 354-56 (6th Cir. 2016) (finding probable cause where affidavit

---

[2] Notwithstanding the government's extensive discussion of cases finding "status as a drug dealer" to be a relevant consideration in the probable-cause analysis (*see* D.N. 25, PageID # 63-64), the affidavit contained no facts indicating that Page was a known drug dealer.

sought evidence of racketeering, money laundering, and drug trafficking on basis of affiant's knowledge that there were drugs in the house to be searched).

## C.    *Franks*

Page also seeks a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), on the ground that the warrant affidavit was "misleading." (D.N. 22, PageID # 47) Specifically, Page asserts that O'Daniel made a "conclusory and misleading" statement as to where the keys were found ("in [the victim's] possession," as opposed to "near the victim") and mentioned the marijuana smell in the affidavit but not his investigative report. (D.N. 22, PageID # 47)

> Under *Franks*,
>
> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

438 U.S. at 155-56. An affidavit supporting a search warrant is presumed to be valid; a defendant is entitled to a *Franks* hearing only if he makes "allegations of deliberate falsehood or of reckless disregard for the truth . . . accompanied by an offer of proof." *Id.* at 171.

Here, Page does not even argue, much less make a "strong preliminary showing," that O'Daniel "intended to mislead and exclude critical information from the affidavit." *United States v. Young*, 847 F.3d 328, 349 (6th Cir. 2017). Under these circumstances, no *Franks* hearing is required. *Cf. Young*, 847 F.3d at 349 (finding mere "*allegation* that [the affiant] intended to mislead the issuing judge" insufficient).

**III.**

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Page's motion to suppress (D.N. 22) is **DENIED**.